**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIDCO, LLC d/b/a CLOUD NINE SERVICES, | |
| Plaintiff, | |
| v. | |
| JEFFREY NUSSBAUM, BRIAN EGGEMAN, EVA GASIOROWSKA, HUZAIFAH SAIFEE, YANGZHI ZHAO, JULY X3, LLC, EEC GLOBAL SERVICES, LLC, EEC SERVICES, LLC, EEC SERVICES INTERNATIONAL, LTD, SAMUEL SOICHET, KEVIN GOODALL, and GARY RANDALL | Case No. 18-cv-12042 **AMENDED COMPLAINT** |
| Defendants | |
| JEFFREY NUSSBAUM, | |
| Counter-Plaintiff, | |
| v. | |
| SIDCO, LLC d/b/A CLOUD NINE SERVICES, NEWTEK BUSINESS SERVICES CORP., BARRY SLOANE, and STEPHEN "ANDY" PAUL, | |
| Counter-Defendants | |
| EEC GLOBAL SERVICES LLC, | |
| Counter-Plaintiff, | |
| v. | |
| SIDCO, LLC d/b/a CLOUD NINE SERVICES, NEWTEK BUSINESS SERVICES CORP., BARRY SLOANE, and STEPHEN "ANDY" PAUL, | |
| Counter-Defendants | |
| YANGZHI ZHAO, | |
| Counter-Plaintiff, | |
| v. | |
| SIDCO, LLC d/b/a CLOUD NINE SERVICES, | |
| Counter-Defendant | |

This is an action by SIDCO, LLC d/b/a Cloud Nine Services ("SIDCO") to secure damages and injunctive relief against former consultants July X3, LLC and Jeffrey Nussbaum, both in his individual capacity and as the sole member of July X3, LLC (collectively, "Nussbaum"); former employees Brian Eggeman, Eva Gasiorowska, Huzaifah Saifee, and Yangzhi Zhao (collectively, the "Former Employee Defendants"); and their new employer EEC Global Services, LLC ("EEC Global") and its affiliates EEC Services, LLC ("EEC Services"), EEC Services International, Ltd ("EEC International"), Samuel Soichet, Kevin Goodall, and Gary Randall for their collective efforts to steal and otherwise misappropriate SIDCO's confidential information and trade secrets, solicit SIDCO's clients and vendors, and poach SIDCO's employees, in knowing violation of non-disclosure, non-compete, and non-solicit agreements, and commercially disparage SIDCO—all so that the Defendants could establish immediately a competing business using SIDCO's client and vendor relationships without investing in and expending the resources and efforts necessary to build such a business themselves.

Defendants' actions violate the statutory law of the United States and the common law of the State of New York, and constitute a breach of enforceable contractual and fiduciary obligations owed to SIDCO.  SIDCO prays for damages and injunctive relief as set forth below and for such other and further relief as the court may deem appropriate.

For its Complaint, SIDCO pleads the following on information and belief.

## PARTIES

1.      SIDCO is a New York limited liability company with principal offices in New York.  SIDCO's single member and sole owner of its membership interests is non-party Newtek Business Services Holdco 2, Inc., a wholly owned subsidiary of Newtek Business Services Corp. ("Newtek"), a publicly traded internally managed, non-diversified, investment company organized

under the laws of the State of New York that has elected to be regulated as a business development company under the Investment Company Act of 1940.  SIDCO consults, designs, and implements technology solutions for enterprise and commercial clients across the United States.  Among other things, SIDCO specializes in consulting clients in connection with Citrix Systems, Inc. workspaces ("Citrix").

2.      Jeffrey Nussbaum is an individual who resides in New York, New York.  July X3, LLC is a limited liability company whose sole member is Nussbaum.  Nussbaum provided consulting services to SIDCO both through July X3, LLC and in his personal capacity pursuant to an at-will employment arrangement between the parties that terminated on October 24, 2018.  Nussbaum acted as a supervisor of SIDCO and was in charge of overseeing its day-to-day operations.  Nussbaum was paid $662,892 by SIDCO in 2018.

3.      EEC Global Services, LLC ("EEC Global Services") is a Florida limited liability company with offices in Florida.  Nussbaum formed EEC Global on November 13, 2018.  EEC Global offers "consulting and managed services, specializing in digital workspace, networking, and cloud solutions" and advertises itself as being "Citrix certified."[1]  Nussbaum is currently listed as an Executive Consultant at EEC Global.

4.      EEC Services, LLC ("EEC Services") is a Delaware limited liability company and a U.S. subsidiary of EEC Services International, Ltd ("EEC International"). EEC Services have three members: Samuel Soichet, Kevin Goodall, and Gary Randall (collectively "EEC Members").

5.      EEC International is a company organized under the laws of the United Kingdom. It is an IT consulting company with offices in the United Kingdom and the United Arab

---

[1] See Linkedin, "EEC Global Services", https://www.linkedin.com/company/eecgs/ (last visited Dec. 19, 2018).

Emirates. EEC International has five shareholders: Kevin Goodall, Gary Randall, Samuel Soichet, Aiden Groom, and Paul Jones.

6.   Brian Eggeman is an individual who resides in Illinois.  Eggeman was employed by SIDCO as a Services Relationship Manager from November 27, 2017 until his resignation without notice on November 5, 2018.

7.   Eva Gasiorowska is an individual who resides in Tennessee.  Gasiorowska was employed by SIDCO as Director of Operations from July 1, 2017 until her resignation without notice on November 1, 2018.

8.   Huzaifah Saifee is an individual who resides in Texas.  Saifee was employed by SIDCO as a Services Relationship Manager from July 1, 2017 until resignation without notice on November 5, 2018.

9.    Yangzhi Zhao is an individual who resides in Illinois.  Zhao was employed by SIDCO as its Senior Vice President for Business Development from July 1, 2017 until his abrupt resignation on October 31, 2018.

10.   Samuel Soichet is an individual who, upon information and belief, resides in Dubai, United Arab Emirates Soichet is a member of EEC Services and a shareholder of EEC International.

11.   Kevin Goodall is an individual who, upon information and belief, resides in the United Kingdom. Goodall is a member of EEC Services and a shareholder of EEC International.

12.   Gary Randall is an individual who, upon information and belief, resides in the United Kingdom. Randall is a member of EEC Services and a shareholder of EEC International.

## JURISDICTION AND VENUE

13.      This action involves claims for violation of 18 U.S.C. §§ 1836, 1030 *et seq.* (Defend Trade Secrets Act).  Accordingly, this action arises under the laws of the United States and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the claims arising under the laws of the United States that they form part of the same case or controversy under Article III of the United States Constitution.

14.      This Court has personal jurisdiction over Defendant Nussbaum because he is a resident of New York.  This Court has personal jurisdiction over all Defendants pursuant to New York's long arm statute, N.Y. CPLR § 302 because, on information and belief, Defendants transact business and have continuous and systematic contacts in this district, maintain an ongoing presence within this district, have purposefully availed themselves of the privileges and benefits of the laws of the state of New York, and have engaged in tortious acts within New York that have caused injury to SIDCO in New York.

15.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND

16.      On or about April 6, 2017, non-party Newtek acquired all of the stock of International Professional Marketing, Inc. ("IPM"), a technology solutions provider specializing in IT infrastructure, cloud migration, and virtualization for approximately $11 million.

17.      As part of the acquisition, Newtek established SIDCO to conduct IPM's Citrix consulting business as a stand-alone business.

18.     On July 1, 2017, SIDCO entered into an Assignment and Assumption Agreement with IPM, pursuant to which SIDCO acquired all rights, duties, and obligations of IPM with respect to a number of vendor contracts including the contract between IPM and EEC Services dated November 27, 2016.  A true and correct copy of the Assignment and Assumption Agreement is attached as Exhibit A to the Declaration of Christie Botelho ("Botelho Decl.").[2]

19.     SIDCO acquired highly valuable confidential and proprietary trade secret information from IPM relating to its Citrix consulting business upon which SIDCO has built its business including (collectively, the "Confidential Information"):

a.      SIDCO's Service Catalogue, a comprehensive list of all possible engagements together with associated tasks and costs.  This highly valuable information was developed by SIDCO (and IPM before it) with significant effort and expense over a period of more than 15 years, and could not be replicated by a new company without substantial time and costs.  This "playbook" for SIDCO's business would be invaluable to another company seeking to provide the types of products and services that SIDCO provides to its clients.

b.      The identities of SIDCO's clients and vendors, including the contact information, relationship histories, preferences, and potential future business needs of key contacts and decision makers.

c.      SIDCO's non-public financial statements and financial projections.

d.      SIDCO's planned future initiatives, including the identities of potential and prospective clients and vendors, and SIDCO's future service offerings.

---

[2] The Botelho Declaration was previously filed at Dkt. 22 and is incorporated herein by reference.

e.      SIDCO's subcontractor agreements with its vendors, including rate schedules.  With access to this highly sensitive and competitively valuable information, a competitor would know, among other things, the rates needed to undercut SIDCO's rate schedules and solicit SIDCO's vendors to leave SIDCO and join another company.

f.      SIDCO's Master Service Agreements with its clients reflecting SIDCO's pricing structures and negotiated rates.

g.      SIDCO's scopes of work, which detail project tasks, deliverables, price, hours, and resource types disclosing the profitability of SIDCO's products and services.

h.      SIDCO's records of the deliverables and work product for Citrix consulting services that SIDCO has provided to its clients, including project notes, interim deliverables, and project documentation.

i.      SIDCO's internal policies and procedures, including its proprietary procedures regarding project management, delivery management, and delivery execution.

j.      SIDCO's staff training materials.

20.     The importance and value of the Confidential Information was recognized in the Stock Purchase Agreement pursuant to which Newtek acquired IPM and spun off its Citrix consulting business into SIDCO, for $11,119,688.

21.     For example, the Stock Purchase Agreement included representations and warranties that IPM had taken "precautions to protect the secrecy, confidentiality, and value of its Trade Secrets including agreements with its employees and contractors regarding confidentiality and covering the periods during and following their service to the Company ... [and that] no Trade Secrets owned by Company have been disclosed to a third party, excluding employees and contractors, except under a confidentiality agreement.  Company has received no written notice

and otherwise has no Knowledge that any Trade Secret of Company is subject to any adverse claim or that the validity of the Trade Secret has been challenged or threatened in any way." Without SIDCO's trade secrets, which in essence make up how it conducts its business, the value of SIDCO and IPM would diminish significantly.

22.     Moreover, the value of SIDCO and its trade secrets, which were developed by IPM over many years at substantial costs, were fair valued by Newtek as of September 30, 2018, at $7.82 million. *See* Newtek Business Services Corp. Form 10-Q for the period ended September 30, 2018, pp. 104.

### Nussbaum and the Former Employee Defendants' Employment With SIDCO

23.     Before becoming employees of SIDCO, Gasiorowska, Saifee, Zhao, and Eggeman (collectively, the "Former Employee Defendants") worked for IPM's Citrix consulting business and had each entered into an identical Confidentiality, Inventions, Non-Solicitation, and Arbitration Agreement ("Confidentiality Agreement") with IPM.

24.     Nussbaum had been employed by IPM since 2005 and served as IPM's director of staffing. After the acquisition, Nussbaum transitioned from working with IPM to working with SIDCO pursuant to an at-will consulting services arrangement. Through his position, Nussbaum was in charge of overseeing SIDCO's day-to-day operations. Among other things, Nussbaum was in charge of protecting SIDCO's Confidential Information and competitive advantage by ensuring that SIDCO's employees executed confidentiality, non-competition, and non-solicitation agreements.

25.     Nussbaum was instructed that, in order to protect SIDCO's newly acquired trade secrets, all SIDCO employees must covenant to not disclose confidential information.

26.     At Nussbaum's request, Gasiorowska and Saifee (on July 1, 2017) and Eggeman (on December 7, 2017) entered into Adoption Agreements.   True and correct copies of Gasiorowska's, Saifee's, and Eggeman's Adoption Agreements attaching the above-referenced Confidentiality Agreement are attached as Exhibit B to the Botelho Decl.

27.     Pursuant to the Adoption Agreement, Eggeman, Gasiorowska, and Saifee, respectively, agreed to be bound by all of the terms and conditions of the Confidentiality Agreement, which were adopted as if they had originally been entered by and between the employee and SIDCO.   (Botelho Decl., Ex. B, §§ 2 and 3.)

28.     On January 1, 2018, Zhao entered an Employment Agreement with SIDCO and received a substantial raise in compensation.   At the time his resignation became effective on November 30, 2018, Zhao had earned $331,239 for 2018.   A true and correct copy of Zhao's Employment Agreement is attached as Exhibit C to the Botelho Decl.

### The Former Employee Defendants' Confidentiality and Non-Solicitation Obligations

29.     Pursuant to the Confidentiality Agreement, Eggeman, Gasiorowska, and Saifee acknowledged that SIDCO possessed protectable trade secrets and confidential information that they agreed to protect from disclosure:

> You recognize that [SIDCO's] confidential information is a valuable and unique asset of [SIDCO's] business and that your access to and knowledge of any confidential information is necessary for you to perform your duties as an employee. You agree that during and after your employment by [SIDCO] you will not (other than in the performance of your duties for [SIDCO]) make use of or divulge any confidential information to any person, firm, corporation or other entity.  The term "confidential information" shall include, but not be limited to, the following: customer lists, supplier lists, prices, costs, customer sales information, contract bidding methods, customer routing information, budgets, strategies marketing plans, forecasts, projections, financial statements, designs, developments, trade secrets, processes, formulae, inventions, techniques, management information systems, and any other information in whatever form that relates to the present or prospective business of

9

> [SIDCO] and which is not readily available to the public.  The term
> confidential information also includes any information in the
> possession of [SIDCO] which belongs to any third party or any
> affiliate of [SIDCO].

(Botelho Decl., Ex. B., § 2.)

30.    In addition, Eggeman, Gasiorowska, and Saifee agreed in the Confidentiality

Agreement that "any work or work product produced by you in the course of your employment by

[SIDCO] shall be the property of [SIDCO] and shall remain the property of [SIDCO] after your

employment."  (Botelho Decl., Ex. B., § 3.)

31.    Further, because of the sensitive nature of SIDCO's consulting business, as a

condition of employment with SIDCO, Eggeman, Gasiorowska, and Saifee agreed, for a period of

one year after the end of his or her employment, not to compete with SIDCO by soliciting or

working for any of SIDCO's clients or vendors, as defined therein:

> You agree that for a period of one (1) year after your employment
> with [SIDCO] ends that you will not (i) directly or indirectly furnish
> or solicit sales of any products and services of the type available
> from [SIDCO] to any client of [SIDCO], and (ii) you will not
> directly or indirectly solicit or accept employment with any client of
> [SIDCO]. The term "client" is defined for purposes of this letter
> agreement as any individual or entity that has purchased products or
> services from [SIDCO] at any time during the period commencing
> one (1) year prior to the date of your execution of this letter
> agreement and ending three (3) months after the date that your
> employment with [SIDCO] ends.

> You agree that for a period of one (1) year after your employment
> with [SIDCO] ends that you will not directly or indirectly solicit or
> accept employment with any [SIDCO] vendors.  The term "vendor"
> is defined for purposes of this letter agreement as any individual or
> entity that has supplied [SIDCO] with goods or services at any time
> during the period commencing one (1) year prior to the date of your
> execution of this letter agreement and ending three (3) months after
> the date that your employment with [SIDCO] ends.

(Botelho Decl., Ex. B., §§ 4 and 5.)

32.     Eggeman, Gasiorowska and Saifee also agreed, for a period of two years after the

end of their respective employments, not to compete with SIDCO by soliciting any of SIDCO's

employees:

> You agree that for a period of two (2) years after the date of your
> employment with [SIDCO] ends that: (i) you will not directly or
> indirectly solicit or encourage any employee of [SIDCO] to
> terminate their employment with [SIDCO], (ii) you or any entity
> owned by you, controlled by you or otherwise associated with you
> will not directly or indirectly hire or otherwise employ any current,
> future or former employee of [SIDCO], and (iii) you will not directly
> or indirectly assist or encourage any other individual or entity to hire
> or otherwise employ any current, future or former employee of
> [SIDCO].

(Botelho Decl., Ex. B., § 6.)

33.     In the Employment Agreement, Zhao acknowledged that SIDCO possessed

protectable trade secrets and confidential information that he promised to protect from disclosure:

> Confidentiality.  The Executive will not, at any time whether during
> or after Executive's termination of employment, (i) disclose to
> anyone, without proper authorization from the Company, or (ii) use,
> for Executive's or another's benefit, any confidential or proprietary
> information of the Company or any parent or subsidiary of the
> Company, which may include, but is not limited to, trade secrets,
> business plans or outlooks, financial data, marketing or sales
> programs, customer lists, employee or consultant lists, brand
> formulations, training and operations manuals, products or price
> strategies, mergers, acquisitions, and/or Company personnel issues.

(Botelho Decl., Ex. C, § 13(b).)

34.     Zhao further agreed in the Employment Agreement that he would provide loyal

service to SIDCO, and he promised not to interfere with SIDCO's business by, among other things,

seeking to form, or helping someone else to form, an entity that would compete with SIDCO's

Citrix consulting business:

> Loyalty; Noncompetition.  During the period of his employment
> hereunder the Executive shall devote all of Executive's full business
> time, attention, skill, and efforts to the faithful performance of this

11

> duties hereunder.  During the Term of Executive's employment under this Agreement, the Executive shall not engage in any business or activity contrary to the business affairs or interests of the Company, including forming, seeking to form, or assisting anyone else in forming, any entity to compete with the Company in providing IT consulting and outsourced IT staffing for Citrix Systems, Inc. or any of its affiliates ("Citrix").

(Botelho Decl., Ex. C, § 7.)

35.     In addition, Zhao covenanted and agreed that, during his employment and for a period of six month after the end of his employment, he would not (i) interfere with SIDCO's relationship with Citrix; (ii) compete with SIDCO's Citrix consulting business; or (iii) solicit any of SIDCO's employees:

> Covenants; Non-Interference, Non-Solicitation.  The Executive covenants and agrees that Executive will not at any time for whatever reason: (i) during the Tem of the Agreement; and (ii) during the six (6) month period following Executive's termination of employment, whether for Executive's own account or for the account of any other person, firm, corporation or other business organization:
>
> > (i) interfere with contractual relationships between the Company and Citrix;
> >
> > (ii) form, or seek to form, an entity to compete with the Company in providing IT consulting and outsourced IT staffing for Citrix; or
> >
> > (iii) hire, or solicit for hire, any person who is employed by the Company either as a consultant or direct employee, without the express written consent of the Company.

(Botelho Decl., Ex. C, § 13(a).)

36.     Nussbaum secured each of the Former Employee Defendants' signatures for their respective Employment Agreements and Adoption and Confidentiality Agreements.

**Nussbaum's and the Former Employee Defendants' Coordinated Departures from SIDCO**

37.     Throughout their employments with SIDCO, Nussbaum and the Former Employee Defendants had access to SIDCO's highly valuable Confidential Information.

38.     After working for SIDCO, Nussbaum and Former Employee Defendants used without permission SIDCO's highly valuable trade secrets to undermine SIDCO's business and arise as a new competitor in the industry.

39.     On October 24, 2018, Nussbaum's at-will consulting arrangement with SIDCO (through his company, July X3, LLC) was terminated.  During the period of his consulting arrangement with SIDCO, from mid-2017 through the date of his departure in 2018, SIDCO paid Nussbaum (through July X3, LLC) $850,892.

40.     Because Nussbaum was instrumental in having each of the Former Employee Defendants enter into the Confidentiality and Employment Agreements with SIDCO, Nussbaum had direct knowledge and was fully aware of the terms, conditions, and obligations set forth therein.

41.     Before or very shortly after leaving SIDCO, Nussbaum, and upon information and belief, EEC International, EEC Global Services, EEC Services, and the EEC Members solicited and encouraged each of the four Former Employee Defendants to terminate their employment with SIDCO and to violate their Confidentiality and Employment Agreements by stealing SIDCO's confidential information and trade secrets.

42.     With no notice, Zhao announced his immediate resignation from SIDCO on October 31, 2018.  In response to this sudden announcement, SIDCO reminded Zhao that his Employment Agreement required him to provide 30-days' notice prior to his resignation.  Zhao agreed that his resignation from SIDCO would be effective November 30, 2018.  From mid-2017 through the effective date of his resignation, SIDCO paid Zhao $482,875.

43.     Gasiorowska announced her resignation without notice on November 1, 2018. From mid-2017 through the date of her resignation, SIDCO paid Gasiorowska $129,178.

44.     Eggeman announced his resignation without notice on November 5, 2018.  From November 2017 through the date of his resignation, SIDCO paid Eggeman $139,753.

45.     Saifee announced his resignation without notice on November 5, 2018.  From mid-2017 through the date of his resignation, SIDCO paid Saifee $246,645.

**Defendants Solicit SIDCO's Vendors and Clients Using SIDCO's Misappropriated Trade Secrets**

46.     Shortly after the Former Employee's resignations, on November 13, 2018, Nussbaum formed EEC Global Services, an organization that is in direct competition with SIDCO.

47.     EEC Global Services is affiliated with EEC Services, a U.S. subsidiary of EEC International, which provides Citrix consulting services from offices in Delaware, Europe, and the Middle East.

48.     EEC Services is a SIDCO vendor, as defined by the Confidentiality Agreements. EEC Services and IPM were parties to a subcontractor agreement ("Subcontractor Agreement") dated November 27, 2016, which IPM assigned to SIDCO pursuant to the Assignment and Assumption Agreement, effective as of July 1, 2017.  A true and correct copy of the Subcontractor Agreement with EEC Services is attached as Exhibit D to the Botelho Decl.

49.     EEC Services agreed in the Subcontractor Agreement to confidentiality and non-solicitation obligations in favor of SIDCO/IPM.  (Botelho Decl., Ex. D, §§ 6.1, 6.2, 7.1, 7.2.)

50.     Nussbaum solicited EEC Services and, acting in concert with EEC Services, EEC International, and the EEC Members formed EEC Global Services to compete against SIDCO by

hiring SIDCO's former employees and using SIDCO's misappropriated trade secrets to interfere with SIDCO's business by soliciting SIDCO's clients and vendors.

51.     Soichet, in his personal capacity, loaned Nussbaum $140,000 to operate EEC Global Services.

52.     EEC International, through the EEC Members, granted permission to Nussbaum to use, under certain conditions, the name "EEC Services" in Nussbaum's new company, which allowed Nussbaum to take advantage of brand recognition and other resources of EEC International and EEC Services.

53.     On November 13, 2018, SIDCO became concerned that Defendants may be contemplating breaching their responsibilities under their Confidentiality Agreements and applicable law. More specifically, SIDCO sent Nussbaum a cease and desist letter and demanded that he abide by his duties and responsibilities under the law of New York.

54.     On November 20, 2018, Nussbaum replied and disclaimed any obligations, relying principally on the fact that he had not signed a non-compete or non-solicitation. Therefore, he claimed that he had no obligations and nonetheless denied that he was acting inappropriately. A true and correct copy of Nussbaum's letter is attached as Exhibit H to the Botelho Declaration.

55.     In receipt of this letter, on the next day, SIDCO sent all Former Employees letters alerting them of their obligations under the Confidentiality Agreements and applicable law not to compete, solicit, or misappropriate SIDCO's confidential and proprietary business information, and also requesting that they cease and desist violating their duties and obligations under the law.

56.     Each of the Former Employees responded to the cease and desist letter. True and accurate copies of those letters are attached as Exhibit I to the Botelho Declaration.

57.     By December 2, 2018, Defendants expressly represented they were not violating any obligations they may have under the Confidentiality Agreements or applicable law.

58.     In the meantime, SIDCO came to learn that Nussbaum has repeatedly made commercially derogatory statements about SIDCO—including false, disparaging statements about SIDCO's honesty and ethical practices—with the purpose of causing the Former Employee Defendants to quit employment with SIDCO with no notice, and discouraging SIDCO's clients, vendors, and others from engaging in business with SIDCO.

59.     On December 6, 2018, SIDCO learned, as a result of Nussbaum's inadvertent email sent to his old SIDCO account, that EEC Global Services, contrary to the representations made by Nussbaum and the Former Employees, had entered into a Master Service Agreement with the Chicago Mercantile Exchange ("CME"), a prospective client that Nussbaum and the Former Employees had been in negotiations with prior to their resignations. A copy of the December 6, 2018 email is attached as Exhibit F to the Botelho Declaration.

60.     SIDCO immediately launched an investigation into whether this was accurate, as entering into such an agreement with CME would constitute a clear violation of the Former Employees contractual obligations and Nussbaum's fiduciary duties under the law of New York.

61.     SIDCO's investigation revealed the LinkedIn page for EEC Global Services, which showed that the Former Employees by and through entities that they principally owned and controlled had all been hired by Nussbaum's newly formed company.  A true and correct copy of a screen shot of EEC Global Services' LinkedIn internet web page, taken December 6, 2018, is attached as Exhibit E to the Botelho Decl.

62.     Then, on December 10, 2018, SIDCO learned that that an important vendor, as defined by the Former Employee's Confidentiality Agreements, intended to cease working with

SIDCO. This vendor was solicited and encouraged to end relationship by one or more of the Defendants.

63.     By December 14, SIDCO discovered that despite the representations by Nussbaum and the Former Employees that they were not violating any responsibilities or obligation owed to SIDCO, they were in fact violating the Confidentiality Agreements and duties of fiduciary responsibilities by entering into employment agreements, soliciting former customers, and soliciting vendors to work with the new organization in violation of their contractual non-compete and non-solicitation obligations.

64.     Defendants Eggeman and Gasiorowska each accessed confidential, trade secret SIDCO information after their resignations. Specifically, they accessed SIDCO's ShareFile database and downloaded documents containing confidential and proprietary information. Upon information and belief, Defendants have not returned or destroyed SIDCO's confidential and proprietary information, which was wrongfully accessed after they resigned.

65.     Nussbaum and the Former Employee Defendants have improperly used SIDCO's confidential and proprietary trade secret information, which they misappropriated from SIDCO, to solicit SIDCO's clients and vendors, to encourage that they terminate their relationships with SIDCO, and to enter into contracts with EEC Global Services.

66.     Immediately prior to Nussbaum's and the Former Employees' departures, SIDCO was actively in discussions with CME regarding various potential lucrative Citrix consulting projects. Specifically, on behalf of SIDCO, Eggeman had created a scope document for managed services for CME on October 9, 2018. On behalf of SIDCO, Zhao had prepared a scope document and quote for assessment services for CME on October 15, 2018. And on October 29, 2018—just

two days before he submitted his resignation—Zhao had an onsite meeting with CME in Chicago on behalf of SIDCO.

67.     Defendants used SIDCO's misappropriated proprietary and confidential trade secrets to create and procure the CME Master Services Agreement.  In soliciting CME and procuring the CME Master Services Agreement, Defendants used SIDCO's trade secrets including the identity and relationship history of SIDCO's client CME, the identities of SIDCO's vendors for Citrix consulting services, the terms of SIDCO's subcontractor agreements with those vendors, the terms of SIDCO's Master Service Agreements with its clients including pricing and rate structures, and knowledge of SIDCO's deliverables, work product, project tasks and procedures for performing Citrix consulting services.

68.     Nussbaum, EEC Global Services, Zhao, and Eggeman coordinated with EEC Services, EEC International, Goodall, and other EEC International employees to solicit business from CME and negotiate the Master Services Agreement. Specifically, Nussbaum, EEC Global Services, Zhao, and Eggeman, sought legal and other business advice from EEC International with respect to the relevant contracts and used EEC International logos on documents exchanged with CME.

69.     In connection with the CME transaction, Defendants used email addresses indicating they were all affiliates. Specifically, Defendant, whether working for EEC Global, EEC Services, or EEC International, used a "@eecservices.com" email address, demonstrating their affiliation and portrayal to potential customers that they were acting as an integrated business.

70.     On December 10, 2018, SIDCO received notice that Rene Gamache, an important vendor as defined by the Confidentiality Agreement, intended to cease working with SIDCO at the end of December 2018, even though there were numerous lucrative statements of work that the

vendor had yet to undertake on behalf of SIDCO. The sudden termination of this important vendor relationship materially and negatively impacted SIDCO's business. On information and belief, this vendor was solicited and encouraged to end its relationship with SIDCO by one or more of the Defendants.

71.    On January 8-10, 2019, Nussbaum, EEC Global Services, and the Former Employee Defendants attended the Citrix Summit in Orlando Florida, a major conference for Citrix partners, for the purpose of soliciting Citrix business on behalf of EEC Global Services. The Former Employee Defendants met with SIDCO clients at the Citrix Summit and held themselves out to other prospective clients as representatives of EEC Global Services. These clients included Citrix, Sayers, and Burwood.

72.    Also attending the Citrix Summit and holding himself out as a representative of EEC Global Services was Rene Gamache, the important vendor of SIDCO who inexplicably (at the time) notified SIDCO in December 2018 that he could no longer work with SIDCO.

73.    On January 24, 2019, defendants Zhao sent an email to defendant Gasiorowska discussing the solicitation of SIDCO customers, which solicitation was derived from SIDCO trade secrets. Defendant Zhao stated, "Any updates on when I can expect the ePlus, Burwood, and MTM [Master Service Agreements]? Just want to set expectations with the customers."

**Plaintiff Has Notified Nussbaum and the Former Employee Defendants of their Legal Obligations to No Avail**

74.    On November 13, 2018, SIDCO sent a cease and desist letter to Nussbaum, and on November 21, 2018, SIDCO sent cease and desist letters to each of the Former Employee Defendants, demanding that each of them abide by the obligations owed to SIDCO either by contract or common law and refrain from soliciting SIDCO's clients and vendors through the misuse of SIDCO's confidential and proprietary trade secrets. True and correct copies of the cease

and desist letters sent to Nussbaum and the Former Employee Defendants are attached as Exhibit G to the Botelho Decl.  These defendants have failed to do so.

75.     As of the date of this filing, the Defendants, collectively and individually, have successfully and unlawfully interfered with SIDCO's relationships with clients and vendors constituting a loss to SIDCO well in excess of the jurisdictional limits of this Court and in an amount to be proven at trial.

**FIRST CAUSE OF ACTION**
**Violation of the Defend Trade Secrets Act of 2016 – 18 U.S.C. § 1836**
**(As Against All Defendants)**

76.     SIDCO repeats and realleges paragraphs 1 through 75 as if fully set forth herein.

77.     By committing the actions as set forth herein, Defendants have misappropriated and continue to misappropriate SIDCO's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836.

78.     SIDCO possesses confidential and proprietary trade secrets that derive their independent economic value from not being generally known to, or readily ascertainable through proper means by, SIDCO's competitors because such information is critical to the operation of SIDCO's business, and, if available to others, would enable them to compete with SIDCO to SIDCO's detriment.

79.     SIDCO has taken reasonable measures to maintain the secrecy of its trade secrets.

80.     SIDCO's trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce, as they are used with SIDCO's products and services, which are offered and used across the country.

81.     Nussbaum, EEC Global Services, EEC Services, the Former Employee Defendants, EEC International, and acquired SIDCO's trade secrets by including, but not limited to,

misrepresentation, and/or under circumstances giving rise to a duty to maintain secrecy of the trade secret or limit the use of the trade secret.

82. The Defendants have disclosed and used, continue to disclose and use, and will continue to disclose and use SIDCO's trade secrets and other proprietary information without SIDCO's express or implied consent.

83. On information and belief, the Defendants knew or should have known that SIDCO's trade secrets and other proprietary information were acquired by improper means, including theft, misrepresentation, and/or breach or inducement of a breach of a duty to maintain secrecy.

84. As a result of the Defendants' misappropriation of SIDCO's trade secrets and other proprietary information in violation of 18 U.S.C. § 1836, SIDCO has sustained damages in amounts to be proven at trial.

85. The Defendants' actions in converting and misappropriating SIDCO's confidential and proprietary trade secrets for their own gain were willful, wanton, and malicious, and were taken in reckless disregard for the rights of SIDCO.

86. The Defendants' actions have caused and will continue to cause SIDCO irreparable harm if the property used to propagate and disseminate SIDCO's trade secrets and other propriety information is not seized and the Defendants are not preliminarily and permanently enjoined.

**SECOND CAUSE OF ACTION**
**Misappropriation of Trade Secrets**
**(As Against All Defendants)**

87. SIDCO repeats and realleges paragraphs 1 through 86 as if fully set forth herein.

88. By committing the actions as set forth herein, Defendants have misappropriated and continue to misappropriate SIDCO's trade secrets in violation of the laws of the State of New York.

89.     SIDCO has developed and possesses valuable, confidential, and proprietary trade secret information about its products, services, and client and vendor relationships that is integral to its business.

90.     SIDCO's confidential and proprietary trade secret information derives independent economic value from not being generally known or readily available to SIDCO's competitors. SIDCO expended substantial time, energy, money, and ingenuity in compiling this information based on its own efforts and communications with clients, vendors, employees, consultants, and others.

91.     SIDCO's confidential and proprietary information constitutes trade secrets under the laws of the State of New York.

92.     As a result of Nussbaum's and the Former Employee Defendants' work with SIDCO, Defendants came into possession of SIDCO's trade secret and other proprietary information.

93.     SIDCO made reasonable efforts to ensure that the confidential and proprietary information remained secret by, among other protective steps, disclosing it only to those individuals who needed the information to perform their duties, making known to these individuals the fact that the information was to be kept confidential, maintaining reasonable security in and around its place of business, and requiring individuals with access to that information, including Nussbaum and the Former Employee Defendants, to agree to keep its confidence.  The Former Employee Defendants also entered into written agreements with SIDCO, in which they expressly acknowledged that SIDCO possesses protectable trade secrets and agreed to maintain the confidence of that information.

94.     SIDCO is informed and believes, and thereon alleges, that the Defendants have, collectively and individually, misappropriated the trade secrets embodied in SIDCO's confidential information in a willful manner and with the deliberate intent to injure SIDCO's business and to improve Defendants' own business and for their own financial gain.

95.     As a proximate result of the misappropriation of SIDCO's trade secrets, SIDCO has suffered, and will continue to suffer, actual damages, and Defendants will be unjustly enriched, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**Breach of Contract**
**(As Against the Former Employee Defendants)**

96.     SIDCO repeats and realleges paragraphs 1 through 95 as if fully set forth herein.

97.     SIDCO has performed all obligations under the Adoption Agreements.

98.     SIDCO has performed all obligations under the Confidentiality Agreements.

99.     SIDCO has performed all obligations under the Employment Agreement.

100.    Eggeman, Gasiorowska, and Saifee breached Section 2 and Section 3 of their Confidentiality Agreements by engaging in the unauthorized use, disclosure, and misappropriation of SIDCO's confidential and proprietary trade secrets and by failing to return all material containing such confidential information to SIDCO upon their resignations.

101.    Eggeman, Gasiorowska, and Saifee breached Section 4 and Section 5 of their Confidentiality Agreements by directly or indirectly soliciting SIDCO's clients and vendors, including CME and EEC Services.

102.    On information and belief, Eggeman, Gasiorowska, and Saifee breached Section 6 of their Confidentiality Agreements by directly or indirectly soliciting and/or encouraging one or more SIDCO employees to terminate their employment with SIDCO and to join Nussbaum's competing business at EEC Global Services.

103.    On information and belief, Zhao breached Section 7 and Section 13 of his Employment Agreement by assisting in the formation of an entity to compete with SIDCO, soliciting SIDCO clients and employees, and misappropriating SIDCO's confidential information.

104.    As a direct and proximate result of the Former Employee Defendants' breaches, and each of them, SIDCO has suffered and will continue to suffer general and special damages, including the loss of clients, reputation, and goodwill.  SIDCO seeks compensation for all damages and losses proximately caused by the breaches and wrongful conduct of the Former Employee Defendants in an amount to be proven at trial.  Further, SIDCO seeks an injunction restraining the Former Employee Defendants and those acting in concert with them as prayed below.

## FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (As Against Nussbaum and the Former Employee Defendants)

105.    SIDCO repeats and realleges paragraphs 1 through 104 as if fully set forth herein.

106.    By virtue of their special relationship with SIDCO and the special relationship of trust and confidence reposed by SIDCO in them, July X3, LLC, Nussbaum and the Former Employee Defendants, and each of them, were required to act solely in SIDCO's interest.  July X3, LLC, Nussbaum and the Former Employee Defendants, and each of them, also had duties of loyalty and of utmost good faith to SIDCO, and were obligated not to subvert or misappropriate SIDCO's confidential and trade secret information or business opportunities.

107.    On information and belief, Nussbaum and each of the Former Employee Defendants breached their fiduciary duties owed to SIDCO by, among other things, directly or indirectly soliciting and diverting SIDCO's clients, opportunities, and/or employees and by directly or indirectly disclosing and/or using SIDCO's confidential and proprietary trade secret information.

108.    As a direct and proximate result of July X3, LLC's, Nussbaum's and the Former Employee Defendants' breaches of their fiduciary duties, and each of them, SIDCO has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.  SIDCO will continue to suffer this harm unless and until July X3, LLC, Nussbaum and the Former Employee Defendants are restrained from taking further actions in breach of thief fiduciary duties to SIDCO.

109.    As a direct and proximate result of July X3, LLC's, Nussbaum's and the Former Employee Defendants' breaches of their fiduciary duties, and each of them, SIDCO already has suffered and will continue to suffer additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation.

110.    July X3, LLC, Nussbaum and the Former Employee Defendants committed their actions knowingly, willfully and in conscious disregard of SIDCO's rights.  Accordingly, SIDCO is entitled to recover actual and exemplary damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
**Tortious Interference with Contractual Relations**
**(As Against Nussbaum, EEC Global Services, EEC Services, EEC International, and the EEC Members)**

111.    SIDCO repeats and realleges paragraphs 1 through 110 as if fully set forth herein.

112.    SIDCO and the Former Employee Defendants were in contractual relationships that would have resulted in an economic benefit to SIDCO.

113.    Nussbaum, EEC Global Services, and EEC Services had knowledge of the terms and conditions of the Confidentiality Agreements.

114.    Nussbaum, EEC Global Services, and EEC Services had knowledge of the terms and conditions of the Employment Agreement.

115.    SIDCO is informed and believes, and thereon alleges, that Nussbaum, EEC Global Services and EEC Services intended to disrupt and did disrupt SIDCO's contractual relationships with the Former Employee Defendants, and engaged in wrongful conduct by commercially disparaging SIDCO and improperly encouraging the Former Employee Defendants to terminate their employment with SIDCO; to misappropriate SIDCO's confidential information; to solicit SIDCO's clients, vendors, and employees; and to join in a competing business.

116.    As a direct and proximate result of Nussbaum's, EEC Global Services', and EEC Services' acts of interference, the contractual relationships between SIDCO and its employees solicited by Nussbaum, EEC Global Services, and EEC Services were disrupted, and SIDCO has suffered, and will continue to suffer, general and special damages, including the loss of clients, vendors, and employees.

117.    SIDCO seeks compensation for all damages and losses proximately caused by the acts of interference and wrongful conduct of Nussbaum, EEC Global Services, and EEC Services in an amount to be proven at trial. Further, SIDCO seeks an injunction restraining Nussbaum and those acting in concert with them as prayed below.

118.    Nussbaum's, EEC Global Services', and EEC Services' wrongful acts and conduct as described above were willful, oppressive, fraudulent, and malicious, and SIDCO is therefore entitled to punitive damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
### Tortious Interference with Prospective Economic Relations
### (As Against All Defendants)

119.    SIDCO repeats and realleges paragraphs 1 through 118 as if fully set forth herein.

120.    SIDCO and each of its clients and vendors solicited by Defendants were in an economic relationship that would have resulted in an economic benefit to SIDCO.

121.    Defendants knew of these relationships.

122.    On information and belief, that Defendants intended to disrupt these relationships, and engaged in wrongful conduct through breach of contract, improper solicitation of SIDCO's clients, misappropriation of SIDCO's trade secrets, commercial disparagement, and unfair trade practices.

123.    As a direct and proximate result of Defendants' acts of interference, the relationships between SIDCO and its clients and vendors solicited by Defendants were disrupted, and SIDCO has suffered, and will continue to suffer, general and special damages, including the loss of clients, vendors, and employees.  SIDCO seeks compensation for all damages and losses proximately caused by the acts of interference and wrongful conduct of Defendants in amounts to be proven at trial.  Further, SIDCO seeks an injunction restraining Defendants and those acting in concert with them as prayed below.

124.    Defendants' wrongful acts and conduct as described above were willful, oppressive, fraudulent, and malicious, and SIDCO is therefore entitled to punitive damages according to proof.

**SEVENTH CAUSE OF ACTION**
**Unfair Competition**
**(As Against All Defendants)**

125.    SIDCO repeats and realleges paragraphs 1 through 124 as if fully set forth herein.

126.    The conduct described above constitutes unfair trade practices under the laws of the State of New York.

127.    On information and belief, the Defendants have repeatedly made commercially derogatory statements about SIDCO with the purpose of discouraging others from engaging in business with SIDCO.

128.    Defendants' solicitation and acceptance of business from SIDCO's clients has caused irreparable harm to SIDCO's reputation and goodwill, impairing SIDCO's ability to retain existing clients and obtain new clients.

129.    On information and belief, Defendants will continue to solicit and accept business from SIDCO clients, notwithstanding the covenants in the agreements with the Former Employee Defendants.   SIDCO will be forced to institute a multiplicity of suits to obtain adequate compensation for its injuries caused by Defendants' wrongful conduct.

130.    As a direct and proximate result of Defendants' unfair business practices, SIDCO has suffered, and will continue to suffer, losses in amount to be proven at trial.

131.    SIDCO is entitled to temporary and permanent injunctive relief enjoining Defendants and those acting in concert with them from engaging in further conduct constituting unfair trade practices.  SIDCO will suffer further losses in a like manner so long as Defendants' conduct continues.

## <u>DEMAND FOR JUDGMENT</u>

WHEREFORE, SIDCO prays for judgment against the Defendants as follows:

1.    For the seizure of property necessary to prevent the Defendants, and their agents, employees, representatives, and all persons acting in concert or participation with them, from propagating or disseminating SIDCO's trade secrets;

2.    For a temporary restraining order, preliminary injunction, and permanent injunction ordering the Defendants, and their agents, employees, representatives, and all persons acting in concert or participation with them, to return any and all confidential information belonging to SIDCO;

3.     For a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining the Defendants, and their agents, employees, representatives, and all persons acting in concert or participation with them, from engaging in, committing or performing, directly or indirectly, any and all of the following acts:

a.     entering into or attempting to enter into a business relationship of the same type or kind as the business relationship which exists between SIDCO and any of the clients or vendors with whom Nussbaum and/or any of the Former Employee Defendants worked or became familiar with, or whose information was improperly accessed and/or misappropriated by Nussbaum and/or any of the Former Employee Defendants;

b.     entering into or attempting to enter into a business relationship of the same type or kind as the business relationship which exists between SIDCO and any of its customers or vendors for one year after the end the Former Employee Defendants' employment;

c.     accepting any business from or continuing to conduct any business with any customer or vendor of SIDCO, whom the Defendants, or any of them, solicited at any time for the purpose of doing business with the Defendants, or any of them, in violation of Nussbaum's and the Former Employee Defendants' obligations owed to SIDCO;

d.     soliciting any employee of SIDCO to terminate their employment with SIDCO, or directly or indirectly hiring, or encouraging or assisting any other person or entity to hire, any current, future, or former employee of SIDCO for two years after the end of the Former Employee Defendants' employment; and

e.     using or disclosing or divulging at any time to any person, firm or corporation, including for purposes of soliciting any customer or vendor of SIDCO or any customer or vendor with whom Nussbaum and/or any of the Former Employee Defendants worked

29

or became familiar with while in working for SIDCO, any confidential information belonging to

SIDCO.

        4.       For general and special damages in an amount to be proven at trial;

        5.       For interest at the maximum legal rate;

        6.       For punitive damages in a sum to be determined;

        7.       For SIDCO's costs of suit and reasonable attorneys' fees; and

        8.       For such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         April 5, 2019

                                            */s/ Ronald W. Zdrojeski*

                                            Ronald W. Zdrojeski
                                            Lewis S. Wiener
                                            Alex P. Fuchs
                                            Eversheds Sutherland (US) LLP
                                            The Grace Building, 40th Floor
                                            1114 Avenue of the Americas
                                            New York, NY 10036
                                            (p) 212.389.5000
                                            ronzdrojeski@eversheds-sutherland.com
                                            lewwiener@eversheds-sutherland.com
                                            alexfuchs@eversheds-sutherland.com

                                            *Of counsel:*
                                            Brittany M. Cambre
                                            Eversheds Sutherland (US) LLP
                                            999 Peachtree Street, NE, Suite 2300
                                            Atlanta, GA 30309-3996
                                            (p) 404.853.8063
                                            (f) 404.853.8806
                                            brittanycambre@eversheds-sutherland.com

                                            *Counsel for Plaintiff SIDCO, LLC*